UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) | |
| | ) | Criminal No. 11-15-GFVT |
| Plaintiff, | ) ) | |
| V. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| EDDIE RAY WILBURN, | ) ) | **ORDER** |
| Defendant. | ) ) ) | |

\*\*\*    \*\*\*    \*\*\*    \*\*\*

This matter is before the Court on Judge Ingram's Recommended Disposition [R. 421] of the suppression motion [R. 283; R. 302] of Eddie Ray Wilburn. In the Recommended Disposition, Judge Ingram recommends that the Court deny Wilburn's Motion to Suppress. Wilburn filed a brief objection, wherein he challenged Judge Ingram's conclusions on a key witness's authority to consent to a search. For the reasons set forth below, the Court will overrule Wilburn's objections, adopt Judge Ingram's Recommendation, and deny Wilburn's motion to suppress.

### I.

Under 28 U.S.C. § 636(b)(1)(C), the Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." However, "[t]he objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). Wilburn has cited no case law or other authority in his brief supporting his position. The

1

Court notes that in other districts, this failure alone may cause a party's objections to go unheard. *See Banta Corp. v. Hunter Pub. Ltd. Partnership*, 915 F.Supp. 80, 81 (E.D. Wis. 1995) ("*De novo* review of a magistrate judge's recommendation is required only for those portions of the recommendation for which particularized objections, *accompanied by legal authority* and argument in support of the objections, are made") (emphasis added). Nonetheless, the Court finds that Wilburn's objections meet the broad requirement that they must "focus attention on those issues that are at the heart of the parties' dispute." *Howard v. Secretary of Health and Human Services*, 932 F.2d 505, 509 (6th Cir. 1991) (citation omitted).

## II.

Wilburn has objected on three grounds, each challenging the validity of a third party's consent to search Wilburn's home and the surrounding area. That third party, Hollie Adkins, was the live-in girlfriend of Wilburn at the time she consented to a police search of Wilburn's home and nearby land. [R. 421 at 15]. She had been living there for a period of two to three weeks. [*Id.*]. Judge Ingram found that Adkins "had actual and apparent authority to consent to the search of Defendant's trailer" and "apparent authority to consent to the search for the propane tank" located near Wilburn's trailer and buried underground. [R. 421 at 23]. Wilburn objected to both findings of Adkins' authority, arguing that she had no actual authority to consent and that the officers' reliance on apparent authority was misplaced as Adkins was not credible prior to consenting. [R. 426 at 2].

## A.

Wilburn argues the finding of actual authority was erroneous for two reasons. First, he ties what he concludes is a shaky basis for apparent authority to what he argues must correspond to a finding of no actual authority, "if her apparent authority was questionable the officers

2

certainly could not rely on actual authority." [R. 426 at 2]. Like all of Wilburn's arguments, he cites no legal authority to support this proposition. Indeed, Wilburn's argument is at odds with the clear legal principles present in this situation. Apparent authority is present when "the facts available to the officer at the moment warrant a man of reasonable caution in the belief that the consenting party had authority over the premises." *United States v. Campbell*, 317 F.3d 597, 608 (6th Cir. 2003) (quotation omitted). Thus, apparent authority, as an idea, concerns what information the officers knew at the time of the search and whether it would be reasonable to conclude that the consenter had authority.

    This is very different from actual authority. The concept of actual authority is concerned with whether the consenter had actual dominion over the object he authorized to be searched. *See Pratt v. United States*, 214 Fed.Appx. 532, 535 (6th Cir. 2007) (finding that a defendant's mother had actual authority over his bedroom because it was in her house and that this actual authority made her consent to search the bedroom valid). Actual authority, then, is very different from apparent authority. Actual authority is present when the consenter has actual rights in the object; the focus in this analysis is on the consenter. Apparent authority, on the other hand, is present when officers could reasonably perceive that the consenter had such rights; the focus is on the officers' perception. Each concept emphasizes something different. This, in addition to the fact that Wilburn provided no support for his attempt to tie their analyses together, compels the Court to reject Wilburn's objection on this point as meritless.

### B.

    Similarly, Wilburn's second actual authority argument will also be overruled. Wilburn takes umbrage with Judge Ingram's reliance on items found at the location of the search to find that Adkins had actual authority over the premises. He argues that "the fact that someone is

3

aware that something is present really has nothing to do with their authority to consent to a search." [R. 426 at 2]. As Judge Ingram pointed out, Wilburn is correct if one is analyzing *apparent* authority. [R. 421 at 9] ("[S]uch evidence is irrelevant with respect to whether Adkins had **apparent** authority"). In the apparent authority analysis, "[f]acts that came to light after the search began cannot reasonably have influenced the officers' beliefs regarding whether [the third party] possessed apparent authority." *United State v. Groves*, 470 F.3d 311, 319 (6th Cir. 2006).

But the same is not true when analyzing *actual* authority. Items such as the women's clothing and personal effects found in Wilburn's home can permissibly be used to establish that Adkins had actual authority as they indicate use and access, the touchstones of actual common authority. *United States v. Matlock*, 415 U.S. 164, 171 n. 7 (1974) (common authority "rests . . . on mutual use of the property by persons generally having joint access or control for most purposes"); *see United States v. Chaidez*, 919 F.2d 1193, 1201 (7th Cir. 1990) (relying, in part, on the women's clothing present in the residence to determine that the female defendant had actual common authority to consent to a search). This is intuitive; determining whether one had common authority over a premises turns on use and access of the premises, *Matlock*, 415 U.S. at 171, and one cannot fully examine these factors without analyzing the items found within the home. As a result, the Court finds Wilburn's second argument alleging a lack of actual authority to be unavailing as well.

## C.

Wilburn challenges Judge Ingram's finding of Adkins' apparent authority as well. Specifically, Wilburn argues that Adkins' "lack of credibility precluded reliance on apparent authority." [R. 426 at 2]. As already stated, *supra*, apparent authority is present so long as "the facts available to the officer at the moment warrant a man of reasonable caution in the belief that

4

the consenting party had authority over the premises." *United States v. Campbell*, 317 F.3d 597, 608 (6th Cir. 2003) (quotation omitted).  Further, it is appropriate to note that the Sixth Circuit has "confirmed a number of times that a live-in girlfriend has common authority over the premises wherein she cohabits with a boyfriend." *United States v. Penney*, 576 F.3d 297, 308 (6th Cir. 2009). Thus, Wilburn's argument is most easily characterized as an assertion that the officers should not have believed Adkins' statements about being Wilburn's live-in girlfriend. As a result, the argument goes, it was unreasonable for them to rely on said statements as valid consent to search the home and surrounding land.

While it is true that Adkins fabricated the story about a shooting that initially drew the officers to the location, Judge Ingram outlines a number of reasons why the officers were still reasonable in finding apparent authority to search based on her statements.  First, Adkins "provided a detailed statement to [one of the officers] regarding the conspiracy to manufacture methamphetamine which was specific as to locations, drug quantities, and names of alleged co-conspirators and customers.  Many of these details were consistent with [the officer's] prior investigation into individuals that had been delivering pseudoephedrine to Eddie Wilburn and Rusty Collins." [R. 421 at 11].  This would indicate that Adkins was believable in that she was providing truthful information that the officer had already independently verified.

Second, Adkins was making statements incriminating herself in a conspiracy to manufacture methamphetamine.  [R. 421 at 11].  It was plain from the statements that acts of the conspiracy were centered at and around Wilburn's home.  [*Id*. at 18].  As Adkins' "statements were against her penal interest . . . they carried their own indicia of reliability." *United States v. Matlock*, 415 U.S. 164, 176 (1974); *see* Fed. R. Evid. 804(b)(3).  When coupled with the

nonverbal activity[1] of Adkins that indicated she had common authority over the home, these two justifications were sufficient for the officers to find Adkins' claim that she lived in the home credible. This finding, of course, means that apparent authority existed to search the home.

With respect to Adkins' credibility in authorizing the search of the land surrounding the house, it had been even further bolstered once the officers searched the home and found that Adkins had "correctly identified the location of the chemicals and equipment allegedly used to manufacture methamphetamine" as well as her own personal belongings inside the house. [R. 421 at 11]. Thus, there is even more support for finding Adkins credible when it comes to her apparent authority to authorize the dig for the propane tank at its precise spot located outside the home.

Having analyzed each of Wilburn's objections and found them unpersuasive, the Court must deny said objections in their entirety.

### III.

Accordingly, and being sufficiently advised, it is hereby **ORDERED** as follows:

1.   Wilburn's Objections to the Magistrate Recommended Disposition [R. 426] are **OVERRULED**;

2.   The Magistrate Judge's Recommended Disposition [R. 421] is **ADOPTED and INCORPORATED** herein; and

3.   Wilburn's Motion to Suppress [R. 283; R. 302] is **DENIED**.

---

[1] Most importantly, this included leading the officers into the unlocked home. [R. 421 at 19]. This is the exact type of privilege, as Judge Ingram pointed out [R. 421 at 19], that only one who has authority over a premises would exercise in the normal instance. "[W]here a person exercises privileges that would only be proper for an occupant of the house, the police may draw the inference that the person is indeed an occupant unless there are other circumstances that would cause a reasonable man to doubt the validity of that inference." *United States v. Almeida-*

This, the 11th of May, 2012.



Signed By:
*Gregory F. Van Tatenhove*
United States District Judge

---

*Perez*, 549 F.3d 1162, 1171 (8th Cir. 2008).